UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CYNTHIA LOUISE RABB,

                Plaintiff,

-vs-                                Case No.  6:12-cv-1562-Orl-28KRS

THE SCHOOL BOARD OF ORANGE
COUNTY, FLORIDA,

                Defendant.

## ORDER

Cynthia Louise Rabb brings this action against her former employer, the School Board of Orange County, Florida, alleging discrimination under the Americans with Disabilities Act ("ADA")[1] and the Florida Civil Rights Act of 1992 ("FCRA").[2]  The School Board has moved for summary judgment,[3] and as set forth below that motion must be granted.

### I. Background

The facts of this case are essentially undisputed.  Ms. Rabb began her employment with Orange County Public Schools ("OCPS") as a full-time fifth-grade teacher at Winegard Elementary for the 2001-2002 school year.  She worked in that position on an annual contract basis for the 2002-2003 and 2003-2004 school years as well.  During 2003, Ms.

---

[1]42 U.S.C. §§ 12101-12213.

[2]§§ 509.092, 760.01-.11, Fla. Stat.

[3]The pertinent filings are:  Defendant's Motion for Summary Judgment (Doc. 41); Plaintiff's Response (Doc. 42); and Defendant's Reply (Doc. 43).

Rabb suffered a stroke and took a leave of absence from work. (Pl. Dep.[4] at 69-70). She made a full recovery from that stroke and returned to teaching without requiring any accommodation. (Id. at 70-71; Joint Pretrial Statement ("JPS"), Doc. 48, at 7).

For the 2004-2005 school year, Ms. Rabb worked as a full-time fifth-grade teacher under a Professional Services Contract, under which she enjoyed additional rights including automatic renewal of her contract. (See Pl. Dep. at 25-26; JPS at 6). She continued to work in her fifth-grade teacher position at Winegard Elementary under renewed contracts for the 2005-2006, 2006-2007, 2007-2008, and 2008-2009 school years.

While working at the school in December 2008, Ms. Rabb suffered a second stroke, but she completely recovered and soon returned to work without needing an accommodation. (Pl. Dep. at 72-73; JPS at 7). However, on December 31, 2008, Ms. Rabb suffered a third stroke that required hospitalization through January 30, 2009. (Pl. Dep. at 53, 55). Because of this third stroke, Ms. Rabb requested and was granted a leave of absence for the rest of the 2008-2009 school year. (Id. at 66-67; JPS at 7).

Ms. Rabb's third stroke caused several impairments, including a condition called aphasia that Ms. Rabb described as words not coming out right. (See, e.g., Pl. Dep. at 57 ("[Y]ou know what you want to say but it won't come out."); id. at 10 ("I know what I want to say, but it won't come out correctly sometimes.")). Additionally, preparing for the classroom was tiring for Ms. Rabb after the third stroke, and she did not have the energy to work the hours required. (Id. at 62-65). It is undisputed that aphasia and the other impairments

---

[4]Ms. Rabb's deposition consists of two volumes. (Docs. 41-31 & 42-32). Page citations are to the page numbers in the continuously-paginated volumes.

caused by the third stroke prevented Ms. Rabb from resuming work as a full-time fifth grade teacher.  (Id. at 76).

Nevertheless, the School Board renewed Ms. Rabb's Professional Services Contract for the 2009-2010 school year.  (Id. at 120-21; JPS at 8).  Ms. Rabb then requested and was granted a leave of absence for the entire fall term.  (Pl. Dep. at 74-75; JPS at 8).  One of Ms. Rabb's doctors thought it would be helpful to her to talk to and be with people, and accordingly he released her to work very light duty—for example, filing, faxing, and making copies.  (Pl. Dep. at 119-20; JPS at 8).  Ms. Rabb then began volunteering in the administrative office at Winegard Elementary, performing filing and paperwork tasks.  (Pl. Dep. at 77-78).  During that time, Ms. Rabb applied for and was approved for Social Security disability benefits.  (Id. at 79-80).

While Ms. Rabb was volunteering at Winegard Elementary, the school principal, Dr. Ella Thompson, told Ms. Rabb of the possibility of finding a position in which she could teach small groups of students on a part-time basis.  (Id. at 76-77).  Dr. Thompson funded a part-time position for Ms. Rabb as an Instructional Resource Teacher; Ms. Rabb's duties in that position were to tutor small groups of children in preparing for the Florida Comprehensive Assessment Test—commonly known as the FCAT—three days a week, 3.75 hours per day, in 20- to 30-minute sessions with breaks in between.  (Id. at 58, 84-85, 161).  Ms. Rabb was placed into the part-time position after Mr. Rabb's doctor released her to part-time duty.  (Id. at 122).  There were no other part-time Instructional Resource Teachers during Ms. Rabb's employment, (id. at 104), and the tutoring duties that Ms. Rabb performed in that role had historically been performed using tutors from temporary employment agencies such as Kelly

-3-

Services, (Thompson Decl., Doc. 41-28, ¶ 7).

In January 2010, Dr. Mayer replaced Dr. Thompson as principal of Winegard Elementary, and Dr. Mayer permitted Ms. Rabb to continue working in the part-time position for the remainder of the 2009-2010 school year. (JPS at 9). Neither Dr. Thompson nor Dr. Mayer represented to Ms. Rabb that the part-time position would become a permanent position for her. (Pl. Dep. at 102-04; Thompson Decl. ¶ 8). As Dr. Thompson explains in a sworn declaration, she "was motivated to find work for Ms. Rabb based on [Ms. Rabb's] past dedicated service and out of compassion for [Ms. Rabb's] current circumstances," and "[t]he hope was that Ms. Rabb would recover and be able to return to full[-]time teaching as she was working diligently in her rehabilitation program." (Thompson Decl. ¶¶ 4 & 8).

After the 2009-2010 school year, Ms. Rabb's doctor re-notified OCPS of Ms. Rabb's restrictions and released her to work with small groups for the following school year. (Pl. Dep. at 128-29; Def.'s Ex. 14[5]). Ms. Rabb's Professional Services Contract was renewed for the 2010-2011 school year. (Pl. Dep. at 126-27; Def.'s Ex. 15).

Dr. Mayer resigned as principal prior to the beginning of the 2010-2011 school year and was replaced by Dr. Jhunu Mohapatra, who permitted Ms. Rabb to work in the part-time position throughout that entire school year. (JPS at 9-10). Dr. Mohapatra did not promise Ms. Rabb that the temporary part-time position would continue. (Pl. Dep. at 134).

OCPS notified Ms. Rabb of intent to renew her contract for the 2011-2012 school year. (Def.'s Ex. 16; JPS at 10). However, Dr. Mohapatra informed Ms. Rabb that the

_____

[5]The School Board's twenty-six exhibits are attached to its summary judgment motion (Doc. 41).

school lacked funding to continue the part-time teaching position, though Ms. Rabb does not recall when this occurred. (Pl. Dep. at 135). Dr. Mohapatra explained to Ms. Rabb that due to budget cuts for the 2011-2012 school year, Ms. Rabb could elect to accept a full-time teaching position at Winegard Elementary or have her name placed on an unassigned list in hopes of receiving an assignment to a part-time position at another school. (Mohapatra Decl., Doc. 41-29, ¶ 8; JPS at 10).[6]

On June 24, 2011, Ms. Rabb's doctor stated in a letter that it had come to his attention that Ms. Rabb might be transferred to another school and that he thought such transfer was "ill-advised medically." (Def.'s Ex. 19; Pl. Dep. at 137-38). The doctor asked that any transfer decision be reconsidered. (Def.'s Ex. 19). On July 8, 2011, the doctor again expressed concern about Ms. Rabb possibly being transferred, stating that "[t]ransferring her to an unfamiliar environment where people don't know her or respect her condition could be harmful." (Def.'s Ex. 20; Pl. Dep. at 143-44). Ms. Rabb agreed that this suggested that transferring her would be bad for her health, and she had told the doctor that she preferred to stay at Winegard Elementary and not be transferred somewhere else. (Pl. Dep. at 144-45).

After Ms. Rabb was advised of the option to return to work full-time or be placed on an unassigned list for a part-time position, Ms. Rabb's union representative contacted Carianne Reggio, the Senior Manager, EEO and Legal Services, in the OCPS Department

---

[6]In her deposition, Ms. Rabb testified that she does not have any reason to believe that Dr. Mohapatra in fact had money but was lying to her about not having it or that Dr. Mohapatra wanted to discriminate against her because of her disabilities. (Pl. Dep. at 135).

of Legal Services for assistance with finding Ms. Rabb a position consistent with her restrictions. (Reggio Decl., Doc. 41-27, ¶ 7; JPS at 10-11). Ms. Reggio contacted Ms. Rabb to clarify her situation and asked that Ms. Rabb obtain from her doctors further clarification about her medical restrictions. (JPS at 11). Ms. Rabb's doctor clarified the restrictions—a maximum of 20 hours per week, small groups (maximum of six children), and sessions of one hour or less at a time; the doctor also stated that Ms. Rabb "cannot manage a full work load & a full classroom." (Def.'s Ex. 21; JPS at 11; see also Pl. Dep. at 158-61).

Ms. Reggio referred Ms. Rabb's case to Rivers Lewis, the Senior Manager of Employee Relations, for a fitness-for-duty evaluation. (JPS at 11). Mr. Lewis in turn referred Ms. Rabb to William Newsome, M.D., who performed a fitness-for-duty examination on August 19, 2011. (Id.). Dr. Newsome found that Ms. Rabb was "not currently fit for duty" for the position of teacher, (Def.'s Ex. 22; JPS at 11), and in her deposition Ms. Rabb agreed that she was not able to teach a regular classroom of fifth graders full-time at that time, (Pl. Dep. at 172-73). Mr. Lewis then told Ms. Rabb not to report to work. (Id. at 174-75; JPS at 11-12).

Ms. Rabb then retained a union attorney, Mark Levine, to represent her in August 2011. (Levine Dep., Doc. 41-33, at 6; JPS at 12). Ms. Reggio and OCPS's Associate General Counsel, John Palmerini, informed Mr. Levine of their attempts to find a part-time position for Ms. Rabb that was consistent with her restrictions; OCPS was unable to find any position consistent with those restrictions. (JPS at 12). As an OCPS employee, Ms. Rabb had access to the OCPS intranet service, which posted vacant employment positions, but Ms. Rabb did not avail herself of that information or apply for any vacant job positions listed

on the intranet service.  (Pl. Dep. at 210; JPS at 12).

Eventually, Ms. Reggio and Mr. Palmerini identified a position for Ms. Rabb that was not at Winegard Elementary, but Mr. Levine determined that the position required travel and Ms. Rabb declined that position because she determined that she would not be able to fulfill the duties of that job.  (Levine Dep. at 63-65; JPS at 12-13).  Mr. Palmerini and Mr. Levine determined that it would be in Ms. Rabb's best interest to seek a long-term leave of absence to permit her insurance to be maintained.  (Def.'s Ex. 24; Levine Dep. at 57; JPS at 13).  On June 20, 2012, Mr. Levine informed OCPS that Ms. Rabb elected to resign her position and seek Florida Retirement System Disability Benefits.  (Def.'s Ex. 25; Pl. Dep. at 196-97; JPS at 13).  Ms. Rabb submitted her resignation on October 14, 2012.  (Def.'s Ex. 26; Pl. Dep. at 198; JPS at 13).

Ms. Rabb filed this lawsuit in state court in September 2012, and the School Board removed it to this Court in October 2012.  (Docs. 1 & 2).  In her Complaint, Ms. Rabb alleges that the School Board failed to provide her with a reasonable accommodation as required by the ADA and the FCRA.  The School Board's motion for summary judgment is now ripe for ruling.

## II.  Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).[7]

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine

---

[7]In her summary judgment response, Plaintiff asserts that "[i]n considering whether ther Defendant's Motion for Summary Judgment should be granted, the Plaintiff's allegations in [the] Complaint are deemed correct." (Doc. 42 at 2 (citing Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351 (11th Cir. 2000))). However, the case cited by Plaintiff dealt with the issue of personal jurisdiction and did not address the more generally applicable summary judgment standards set forth in the text of this Order. See 207 F.3d at 1356 ("In resolving a motion for summary judgment based upon lack of personal jurisdiction, the court is required to accept as true the allegations of plaintiff's complaint, and deny the motion if these allegations state a prima facie case of jurisdiction." (citing Bracewell v. Nicholson Air Servs., Inc., 748 F.2d 1499, 1504 (11th Cir. 1984))). Bracewell in turn states: "If the defendant raises a question of personal jurisdiction and the district court elects to decide the question solely on the basis of the pleadings and affidavits, it must accept as true those allegations of the complaint which are not controverted by defendant's evidence and deny the motion to dismiss if the plaintiff presents a prima facie case of jurisdiction." 748 F.2d at 1504. The case at bar does not present an issue regarding personal jurisdiction, and the allegations of the Complaint are not at issue here—the record evidence is. In any event, as noted earlier the facts are not in dispute in this case.

issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.  Discussion

Ms. Rabb asserts that the School Board denied her a reasonable accommodation in violation of the ADA and the FCRA.[8]  However, the School Board correctly argues in its summary judgment motion that Ms. Rabb's assertions are without merit.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "Discrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" Terrell v. USAir, 132 F.3d 621, 624 (11th Cir. 1998) (quoting 42 U.S.C. § 12112(b)(5)(A)).[9]  The School Board does not dispute that Ms.

---

[8]With regard to disability discrimination claims, the FCRA is generally construed in conformity with the ADA.  See, e.g., Byrd v. BT Foods, Inc., 948 So. 2d 921, 925 (Fla. 4th DCA 2007).  The Court thus discusses the claims together, as they are governed by the same standards.

[9]Denial of a reasonable accommodation is the only theory of discrimination asserted in this case.

Rabb has a disability.[10]  The School Board does, however, assert that Ms. Rabb was not a "qualified individual" and that it did not deny her a reasonable accommodation.

The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that the such individual holds or desires." 42 U.S.C. § 12111(8). And, "[t]he term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m).

It is undisputed that prior to her third stroke, Ms. Rabb was qualified by skill, experience, and education to be a full-time fifth-grade classroom teacher and that she was able to perform the essential functions of that position—including working more than seven hours a day, five days a week, as well as preparing lesson plans and managing a classroom. It is also undisputed that after suffering that stroke, Ms. Rabb was no longer able to perform those functions because, among other things, she could not work a full day and could not manage a whole classroom of students.  Ms. Rabb admits that she could only work part-time, up to twenty hours per week, and could only manage a maximum of six students at a time.  Ms. Rabb has not identified any accommodation that would have allowed her to perform the full-time position for which her Professional Services Contract was repeatedly renewed, and thus it is clear that after December 31, 1998, she was not a "qualified

_____

[10]Indeed, the School Board contends that Ms. Rabb's disability rendered her unemployable.  (See Doc. 41 at 17).

individual" with regard to that position.

Ms. Rabb contends that she was a qualified individual with regard to part-time work and that she should have been assigned to a part-time position within her limitations as a reasonable accommodation.  This contention fails.

"'[T]he burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable.'" Terrell, 132 F.3d at 624 (quoting Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278 (11th Cir. 1997)).  Ms. Rabb has not identified an available reasonable accommodation, and the School Board is thus entitled to summary judgment on Ms. Rabb's claims.

The ADA provides that "reasonable accommodations" may include, among other things, "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. § 12111(9). But, "[a]lthough both the statute and regulations list ('may include') part-time work as a potential reasonable accommodation, . . . this listing [does not mean that] part-time work is always a reasonable accommodation." Terrell, 132 F.3d at 626. "A plaintiff does not satisfy her initial burden by simply naming a preferred accommodation—even one mentioned in the statute or regulations; she must show that the accommodation is 'reasonable' given her situation." Id.

In Terrell, the Eleventh Circuit noted that "[w]hether an accommodation is reasonable depends on specific circumstances.  In a specific situation, part-time employment may or may not be reasonable.  [Here], where USAir had no part-time jobs when [the plaintiff] demanded such a position, a request for part-time employment was unreasonable." 132

-11-

F.3d at 626 (internal citation omitted).  The court further held "that USAir was not required to *create* a part-time position for [the plaintiff] where all part-time positions had already been eliminated from the company."  Id.; see also Lamb v. Qualex Inc., 33 F. App'x 49, 59 (4th Cir. 2002) ("Where, however, an employer has no part-time jobs available, a request for part-time employment is not a reasonable one."); cf. Barton v. Bd. of Regents of Univ. Sys. of Ga., 478 F. App'x 627, 631 (11th Cir. 2012) ("Given the situation—a drastically reduced budget for his department, the provision of a part-time administrative assistant, and the need to create a new position to fulfill the requested accommodation—[plaintiff] has not met his burden to establish that the requested accommodation was reasonable.").

Ms. Rabb asserts that she should have been allowed to continue in the part-time position that had been created for her at Winegard Elementary.  However, that job was not funded beyond the 2010-2011 school year, and the School Board was not obligated to continually fund it in order to provide Ms. Rabb with the specific accommodation she desired.  The evidence reflects that everyone, including Ms. Rabb and the principals of Winegard Elementary, had hoped that Ms. Rabb would eventually improve enough to return to full-time teaching, and she was temporarily allowed to work part-time at Winegard Elementary pending that improvement.  The provision of that part-time position did not, however, obligate the School Board to continue to provide it indefinitely.  Cf. Ivey v. First Quality Retail Serv., 490 F. App'x 281, 285-86 (11th Cir. 2012) ("Prior accommodations do not make an accommodation reasonable. . . . The ADA covers people who can perform the essential functions of their jobs presently or in the immediate future. . . . [T]he ADA did not require [the employer] to permanently provide [the plaintiff] with light duty work, . . . [and the

plaintiff] failed to show that permanently offering her light duy work was a reasonable accommodation.").

Finally, to the extent Ms. Rabb contends that she could and should have been placed in another part-time position as a reasonable accommodation, her claims also fail. The record reflects that the School Board made extensive efforts to ascertain Ms. Rabb's restrictions and to find a position that it thought she could perform, but when such a position was identified Ms. Rabb determined that she was unable to meet the requirements of that position. Ms. Rabb has not identified any other available position that she could have performed, and thus she has not established that a reasonable accommodation existed but was denied. The School Board is therefore entitled to summary judgment.

### IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 41) is **GRANTED**.

2. Defendant's Motion in Limine (Doc. 40) is **DENIED as moot**.

3. The Clerk is directed to enter a judgment providing that Plaintiff takes nothing from Defendant on her claims in this case. After entry of judgment, the Clerk shall close this case.

**DONE** and **ORDERED** in Orlando, Florida this _____ day of February, 2014.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

-13-